NOTICE

Decision filed 06/08/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250273-U

NO. 5-25-0273

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 23-CF-289 |
| | ) | |
| TERRY L. HOLLGARTH, | ) | Honorable |
| | ) | Shane M. Mendenhall, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Boie and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The evidence was sufficient to convict the defendant, the trial court did not err in denying the defendant's motion to suppress, the stipulated bench trial was not tantamount to a guilty plea, the defendant's posttrial claims of ineffective assistance of trial counsel lacked merit, the defendant's sentence was not an abuse of the trial court's discretion, and the trial court's failure to admonish the defendant under Rule 605(a) did not require remand. Because no argument to the contrary would have arguable merit, this court grants the defendant's appellate counsel leave to withdraw and affirms the trial court's judgment of conviction.

¶ 2    Following a stipulated bench trial, the trial court found the defendant, Terry L. Hollgarth, guilty of two counts—driving while driver's license suspended or revoked and unlawful use of a weapon. Ultimately, the court sentenced the defendant to imprisonment for one year. The defendant now appeals from the judgment of conviction. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that this direct appeal has no

1

arguable merit and, on that basis, has filed a motion to withdraw as counsel along with a supporting brief. See *Anders v. California*, 386 U.S. 738 (1967); *People v. Jones*, 38 Ill. 2d 384 (1967). OSAD served proper notice on the defendant, and this court gave him ample opportunity to file a response to OSAD's *Anders* motion, but he has not filed a response. Having examined OSAD's *Anders* motion and brief, and the entire record on appeal, this court agrees with OSAD that this appeal has no merit. This court grants OSAD leave to withdraw as counsel and affirms the judgment.

¶ 3                                I. BACKGROUND

¶ 4     In 2023, the State filed a two-count information charging the defendant with (I) the Class 4 felony of driving while driver's license was suspended or revoked, in violation of section 6-303(d-3) of the Illinois Vehicle Code (625 ILCS 5/6-303(d-3) (West 2020)), and (II) the Class A misdemeanor of unlawful use of a weapon, in violation of section 24-1(a)(1) of the Criminal Code of 2012 (720 ILCS 5/24-1(a)(1) (West 2020)). According to count I of the information, the defendant's driver's license had been revoked for driving under the influence of alcohol or other drugs, and he already had been convicted of driving while driver's license was suspended or revoked on three earlier occasions in Macon County case Nos. 96-TR-8872, 97-TR-1373, and 00-TR-18986. The trial court appointed counsel for the defendant.

¶ 5                              A. Motion to Suppress

¶ 6     On June 28, 2023, the defendant filed a motion to suppress evidence. The motion concerned "all evidence illegally obtained" and the defendant's "subsequent statements." The principal argument was that the defendant had completely stopped his vehicle at a stop sign; therefore, the police did not have a reasonable suspicion that a traffic violation had occurred, which left the police with no legal basis for an investigatory stop of the defendant's vehicle. See *Terry v. Ohio*,

2

392 U.S. 1 (1968). The State filed a response, asserting that the officer who stopped the vehicle did, in fact, have reasonable suspicion that the vehicle had failed to come to a complete stop.

¶ 7    On July 25, 2023, the trial court held a hearing on the defendant's motion to suppress. For the defense, counsel called two witnesses—the defendant and Officer Ryan Ricker. The State did not call any witnesses of its own.

¶ 8    The defendant testified that he was driving on February 13, 2023, at approximately 8 p.m. Before turning onto Jasper Street, he encountered a stop sign, and he came to a complete stop at that sign. He testified that he had reviewed, along with counsel, the police officer's dash cam video of the incident. His opinion was that the video was consistent with his recollection that he stopped at the stop sign. On cross-examination by the State, the defendant admitted that his driver's license had been revoked since 1994. He was last arrested for driving while revoked approximately 20 years earlier.

¶ 9    Officer Ryan Ricker of the Decatur Police Department testified that on February 13, 2023, at approximately 8 p.m., he was driving his squad car when he effected a traffic stop on the defendant for failure to stop at a stop sign. The incident was captured on video by a camera installed on his squad car's dashboard. Defense counsel played the video, pausing at times in order to ask questions of Ricker. Based on his own recollection of the incident and on the video, Ricker testified that the defendant did not come to a complete stop at the stop sign. On cross-examination by the State, Ricker confirmed that dashboard cameras do not swivel, and therefore an officer can see more than such a camera can record. When Ricker looked to his left, he saw the defendant's vehicle as it did not come to a complete stop at an intersection, and he knew from prior trips to that area that there was a stop sign at that intersection. Ricker informed the defendant that he had stopped him for failing to come to a complete stop at a stop sign.

3

¶ 10    On motion of the defendant, without objection by the State, the dash cam video was admitted into evidence. The court took the matter under advisement.

¶ 11    This court has reviewed the dash cam video and has found that the video did not provide clarity as to whether the defendant stopped at the stop sign. The video was taken at night, though street lights provided some illumination. When the defendant's car was first glimpsed on video, it was on a side street, moving from left to right on the video screen, approaching the intersection with a main street, on which Officer Ricker's squad car was traveling. The defendant's car was a fair distance ahead of Officer Ricker's squad car. The defendant's car made a left-hand turn onto the main street. However, a viewer cannot discern from the video, even after repeated viewings, whether the defendant's car stopped at the stop sign on the side street before making its left-hand turn onto the main street.

¶ 12    On August 1, 2023, the trial court removed the cause from advisement. The court denied the defendant's motion to suppress.

¶ 13                            B. Stipulated Bench Trial

¶ 14    On November 13, 2023, the parties appeared before the trial court. Defense counsel stated that the defendant intended to waive his right to a jury trial and proceed to a stipulated bench trial. Counsel told the court that his "understanding" was that a stipulated bench trial involved either a stipulation that "the evidence is sufficient for a finding of guilt" or a stipulation "to what the State's evidence would be," and that the defendant wanted the latter sort of stipulated bench trial.

¶ 15    The State proceeded to describe the evidence, as follows:

    "[O]n February 13 of 2023, at approximately 7:55 p.m. Decatur police officers observed a 2010 white Chrysler Sebring fail to come to a complete stop at

4

a stop sign at Jasper and Bon Air. The officer then conducted a traffic stop on the vehicle at Jasper and Cleveland.

The officer made contact with the driver and the soul [*sic*] occupant of the vehicle later identified as defendant before the Court, Mr. Hollgarth. A LEADS check of Mr. Hollgarth's driver's license status showed it to be revoked. State would submit Mr. Hollgarth has three prior convictions for driving while license revoked out of Macon County and those would be on May 17, 1996 under case number 96-TR-8872; on September 20, 1997 *** under 97-TR-1373; and February 1, 2000 in Macon County under case 00-TR-18986.

Additionally, during an inventory search of the vehicle, officers located brass knuckles in the center console of the vehicle. Those brass knuckles having a chrome finish. And, Your Honor, all these events occurred in Macon County, Illinois."

Counsel "[s]o stipulated." Counsel made clear a desire to preserve for appeal the suppression issue, noting that the defendant was "still contesting that [the defendant] didn't fail to stop at a stop sign." The defendant did not concede that he had failed to stop at the stop sign, but rather he stipulated that the officer would so testify. Also, the defendant did not stipulate that the evidence was sufficient to find the defendant guilty.

¶ 16    The court found that the defendant's guilt had been proved beyond a reasonable doubt. The court directed the probation department to prepare a presentence investigation report (PSI) and scheduled a sentencing hearing.

5

¶ 17             C. Defendant's *Pro Se* Posttrial Correspondence, Sentencing

¶ 18     On December 20, 2023, the circuit clerk file-stamped a short, handwritten note, which apparently was correspondence from the defendant. The defendant began the note with this sentence: "Why I'm appealing due to I don't think the public defender did his job." There followed a few vague references to counsel's alleged ineffectiveness. The defendant sought vacatur of the verdicts and a new trial. Also on December 20, 2023, the defendant filed a *pro se* notice of appeal.

¶ 19     The probation department filed a PSI on the defendant. The PSI showed that he had been convicted of driving under the influence of alcohol in Macon County case No. 94-TR-9674. It also showed that the defendant was subsequently convicted of driving on a suspended or revoked license in Macon County case Nos. 96-TR-8872, 97-TR-1373, and 00-TR-18986.

¶ 20     On January 2, 2024, the trial court held a sentencing hearing. Neither party had any objection to the PSI. The State stated that the parties had agreed to a proposed disposition of the case, specifically: for the offense of driving while driver's license was revoked or suspended, with three prior convictions therefor, the defendant would serve 180 days of incarceration in the county jail, and he would pay "the minimum fine plus costs," and for the offense of unlawful use of a weapon, the defendant would serve a concurrent 180 days in the county jail. The defendant expressed his agreement with that disposition. Also, counsel asked the court to "stay the imposition of sentence for 30 days," and the State did not object.

¶ 21     The trial court then made reference to the two documents that the defendant had filed *pro se* on December 20, 2023—"the correspondence" and the premature notice of appeal. "I am going to strike the two documents that you filed because you are still represented by counsel," the judge told the defendant. The court did not address the claims of ineffective assistance of counsel. As for the sentencing itself, the court sentenced the defendant, on each of the two counts, to incarceration

6

in the county jail for 180 days, in accordance with the parties' agreement. The court stayed the mittimus until February 9, 2024, at 8:30 a.m. Finally, the court admonished the defendant as to appeal rights. However, the court incorrectly gave the admonishments appropriate for a defendant who had pleaded guilty pursuant to a negotiated plea agreement. The court did not give the admonishments appropriate for the defendant, *i.e.*, for a defendant who had pleaded not guilty and was found guilty after a trial. The defendant indicated his understanding of the appeal rights.

¶ 22 On February 9, 2024, counsel informed the court of his intention to file (1) a motion seeking reconsideration of the court's ruling on his motion to suppress, and (2) a motion seeking reconsideration of the sentence imposed on the defendant. The court continued the jail status hearing to March 22, 2024, at 1:30 p.m.

¶ 23             D. Defendant's Post-Sentencing Motions, Resentencing

¶ 24 On February 13, 2024, the defendant, through counsel, filed two motions to reconsider. First, the defendant filed a motion to reconsider the trial court's ruling on the defendant's motion to suppress. Second, the defendant filed a motion to reconsider the sentence imposed. The defendant sought to be sentenced to imprisonment in the Illinois Department of Corrections (DOC) for a term of one year. The defendant believed that this prison sentence would entail fewer days actually behind bars than the 180-day jail sentence that the court had imposed, thus increasing the likelihood that he could maintain his employment.

¶ 25 On March 22, 2024, the parties appeared before the trial court. The cause was called for a hearing on the defendant's motion to reconsider the denial of the defendant's motion to suppress. After hearing arguments, the court denied reconsideration of its ruling on the suppression motion. The court then heard arguments on the defendant's motion to reconsider the defendant's sentence. The court gave the parties an opportunity to file memoranda of authority.

¶ 26 On April 3, 2024, the State filed a memorandum of law, wherein the State argued that the defendant's motion to reconsider sentence was untimely and that the trial court had lost jurisdiction to consider the motion. Also on April 3, 2024, defense counsel filed a memorandum of law arguing, *inter alia*, that the trial court retained jurisdiction over sentencing.

¶ 27 On April 5, 2024, the trial court announced to the parties that it had read their memoranda of law as to jurisdiction. The court found that it retained jurisdiction in this case. The court granted the defendant's motion to reconsider sentence. The court vacated the previously imposed jail sentence, and it imposed a prison sentence for a term of one year, to be followed by mandatory supervised release for a term of six months. The financial sentencing order was not amended. That same day, the court entered a written judgment and sentence for the offense of driving while license revoked or suspended with three prior convictions therefor. The written sentence reflected the sentence the court had pronounced. The court admonished the defendant as to appeal rights. Once again, the court gave the admonishments appropriate for a defendant who had pleaded guilty pursuant to a negotiated plea agreement, and not the admonishments appropriate for a defendant who, like the instant defendant, had pleaded not guilty and had been found guilty after a trial.

¶ 28                                 E. The First Direct Appeal

¶ 29 On April 22, 2024, the circuit clerk filed, on behalf of the defendant, a notice of appeal from the sentence and from the denial of reconsideration of the sentence. On May 6, 2024, OSAD filed an amended notice of appeal from the same. On October 7, 2024, the Illinois Supreme Court issued a supervisory order directing this court to treat the defendant's April 22, 2024, notice of appeal as a properly perfected appeal from the judgment of January 2, 2024.

¶ 30 On appeal, the defendant filed in this court, through OSAD, a motion for summary relief. He argued that the cause needed to be remanded because the trial court had failed to conduct a

8

preliminary inquiry into his posttrial claims of ineffective assistance of counsel, as required by *People v. Krankel*, 102 Ill. 2d 181 (1984). Without objection by the State, this court granted the motion for summary relief and remanded this cause for a preliminary inquiry into the ineffective-assistance claims. *People v. Hollgarth*, No. 5-24-0580 (2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 31                          F. The Cause on Remand, *Krankel* Determination

¶ 32     Upon remand, on January 10, 2025, the trial court scheduled this cause for a status hearing on February 5, 2025. At the same time, the court directed the circuit clerk to mail notice of the February 5, 2025, status hearing to the defendant at his last known address.

¶ 33     On January 13, 2025, the circuit clerk complied with the court's directive of January 10, 2025, by mailing notice of the February 5, 2025, status hearing to the defendant at 1371 West Decatur Street in Decatur. There is no indication in the record that the circuit clerk's notice of the February 5, 2025, status hearing went undelivered.

¶ 34     On February 5, 2025, the trial court held the previously-scheduled status hearing. The State and defense counsel appeared. The trial court noted that the defendant had been sent notice of that day's status hearing but nevertheless failed to appear. The court scheduled a hearing for March 26, 2025, with both the circuit clerk and the public defender to send notice to the defendant.

¶ 35     Also on February 5, 2025, the circuit clerk and the public defender mailed to the defendant their separate notices of the hearing scheduled for March 26, 2025. The circuit clerk mailed its notice of the March 26, 2025, hearing to the defendant at 1371 West Decatur Street in Decatur, but this notice was returned to the circuit clerk on February 27, 2025, marked "return to sender – unable to forward." The public defender mailed its notice to the defendant at 1811 East 250 North

9

Road in Beecher City, Illinois. There is no indication in the record that the public defender's notice to the defendant went undelivered.

¶ 36    On March 26, 2025, the trial court called the cause for a hearing. The State and defense counsel appeared, but the defendant did not appear. The trial court noted that the cause had been remanded for a preliminary *Krankel* hearing. The trial court also noted that it had scheduled the hearing for that day, and that both the public defender and the circuit clerk had sent notice of the hearing to the defendant, as both had been directed to do. (The court failed to note that the circuit clerk's notice had been returned to the clerk marked "return to sender – unable to forward.") Counsel stated that it was his recollection that, at the time of sentencing, he had asked the defendant "if he wanted to proceed with any sort of *Krankel* complaints," and the defendant was not interested in pursuing them. The court stated that its recollection was similar. The court found that the defendant's *pro se* motion, complaining about trial counsel, was "without merit," and the court denied the motion. Finally, the court directed the circuit clerk to file a notice of appeal on the defendant's behalf, and the court appointed OSAD to represent the defendant on appeal.

¶ 37    On April 2, 2025, the circuit clerk filed a notice of appeal on the defendant's behalf. After reviewing the case, OSAD found this notice of appeal inadequate in regard to the specification of the orders from which the defendant was appealing. On June 17, 2025, OSAD filed, on the defendant's behalf and with leave of this court, a late notice of appeal. The late notice of appeal made clear that the defendant's appeal encompassed his convictions and sentences, the trial court's ruling on the suppression motion, and the trial court's ruling in the preliminary *Krankel* hearing. Thus, the instant appeal was perfected.

¶ 38                                II. ANALYSIS

¶ 39    This appeal is a direct appeal from a judgment of conviction. As previously noted, the defendant's appellate attorney, OSAD, has filed an *Anders* motion to withdraw as counsel. In the brief accompanying the motion, OSAD raises six potential issues in this appeal. OSAD concludes that none of the six is meritorious, and this court agrees.

¶ 40    The first potential issue raised by OSAD is whether sufficient evidence supports the defendant's convictions. This court will not reverse a criminal conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 41    The due process clause of the United States Constitution's fourteenth amendment (U.S. Const., amend. XIV, § 1) protects a defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In a bench trial, the trial judge is the trier of fact, and it is for the judge to determine the credibility of witnesses, to weigh the evidence, to draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

¶ 42    In reviewing the sufficiency of the evidence in a criminal case, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Hardman*, 2017 IL 121453, ¶ 37. All reasonable inferences from the evidence must be drawn in favor of the prosecution. *People v. Martin*, 2011 IL 109102, ¶ 15. "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the

11

weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009).

¶ 43 Under section 6-303(a) of the Illinois Vehicle Code, a person is guilty of the offense of driving while driver's license is suspended or revoked if (1) the person drives or is in actual physical control of a motor vehicle on any highway of Illinois, and (2) at the time, the person's driver's license was revoked or suspended. 625 ILCS 5/6-303(a) (West 2020). Ordinarily, this offense is a Class A misdemeanor. *Id.* However, the offense becomes a Class 4 felony when the current violation occurred when the person's driver's license was suspended or revoked for driving under the influence of alcohol or other drugs (DUI) and the person has three prior convictions for driving while driver's license suspended or revoked for DUI. *Id.* § 6-303(d-3).

¶ 44 The State did not have any difficulty in proving the elements of the instant offense. The State proved, through stipulated evidence, that the defendant was driving a motor vehicle on a highway of this state, that his driver's license was revoked at the time, and that he had three prior convictions for driving while driver's license suspended or revoked. During his sworn testimony at the hearing on his motion to suppress evidence, the defendant freely admitted to driving his vehicle on a highway at a time when his license was revoked. Indeed, the defendant's only dispute regarding the State's evidence concerned whether the defendant had failed to make a complete stop at a stop sign prior to the traffic stop. The defendant insisted that he had stopped completely at the stop sign, while the police officer who conducted the defendant's traffic stop, Officer Ricker, insisted that the defendant did not stop. The trial court, as the trier of fact, was free to believe the State's evidence. See *Siguenza-Brito*, 235 Ill. 2d at 228.

¶ 45 Also, the defendant was convicted of unlawful use of a weapon. Under section 24-1(a)(1) of the Criminal Code of 2012, a defendant commits the offense of unlawful use of a weapon if he

12

knowingly possesses, *inter alia*, "metal knuckles or other knuckle weapon regardless of its composition." 720 ILCS 5/24-1(a)(1) (West 2020). The stipulated evidence was that after the traffic stop of the defendant, during an inventory search of his vehicle, officers located metal knuckles with a chrome finish. (The metal knuckles can be seen in the dash cam video, which was admitted into evidence at the suppression hearing.) The defendant did not dispute his possession of this weapon. The trial court was free to find the defendant guilty of this offense beyond a reasonable doubt.

¶ 46     On the stipulated evidence presented, a rational trier of fact could have found the defendant guilty of both driving while driver's license suspended or revoked and unlawful use of a weapon. There is no reasonable doubt of the defendant's guilt. Any argument to the contrary would lack substantial merit.

¶ 47     The second potential issue raised by OSAD is whether the trial court erred in denying the defendant's motion to suppress evidence. When reviewing the trial court's ruling on a motion to suppress evidence, this court applies a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). First, the trial court's factual findings will be reversed only if they are against the manifest weight of the evidence. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009). Second, the ultimate ruling on whether suppression was warranted is reviewed *de novo*. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008).

¶ 48     The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. A seizure includes the temporary police detention of persons during a traffic stop. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). A police officer's stop of a vehicle is constitutional only if the officer has a reasonable, articulable suspicion to justify the

13

stop. *People v. Hackett*, 2012 IL 111781, ¶ 20. An officer may stop a vehicle where he has a reasonable, articulable suspicion that the driver violated a provision of the Illinois Vehicle Code. *People v. Mott*, 389 Ill. App. 3d 539, 544 (2009).

¶ 49 Here, at the suppression hearing, Officer Ricker testified that he saw the defendant drive past the stop sign without stopping. The defendant testified that he did stop. Unfortunately, the dash cam video could not resolve this factual dispute because it did not adequately capture the vehicle as it approached the stop sign. Officer Ricker explained that the video camera was not on a swivel and therefore could not capture as broad a view as he could. The trial court was the trier of fact at the suppression hearing, and therefore it was that court's function to determine the credibility of witnesses, the weight to be given their testimonies, and the inferences to be drawn from the evidence. *People v. Burnfield*, 295 Ill. App. 3d 256, 262 (1998). Where the evidence is merely conflicting, this court will not substitute its judgment for that of the trial court. *Id.* The trial court was free to resolve this evidentiary conflict by crediting the officer's testimony.

¶ 50 The trial court did not err in denying the suppression motion. Any argument to the contrary would lack substantial merit.

¶ 51 The third potential issue raised by OSAD is whether the defendant's stipulated bench trial was tantamount to a guilty plea and therefore required admonitions to the defendant under Illinois Supreme Court Rule 402 (eff. July 1, 2012). Rule 402 requires certain admonitions to the defendant "[i]n hearings on pleas of guilty, or in any case in which the defense offers to stipulate that the evidence is sufficient to convict." Ill. S. Ct. R. 402 (eff. July 1, 2012). Whether a defendant's stipulated bench trial was tantamount to a guilty plea is a question of law subject to *de novo* review. *People v. Chapman*, 379 Ill. App. 3d 317, 326 (2007).

¶ 52      In this case, the defendant waived his right to a jury trial and subsequently proceeded to a stipulated bench trial. Our supreme court has held that a stipulated bench trial is tantamount to a guilty plea, requiring Rule 402 admonitions, when either "(1) the State's entire case is presented by stipulation and defendant fails to preserve a defense; or (2) the stipulation concedes the sufficiency of the evidence to support a conviction." *People v. Clendenin*, 238 Ill. 2d 302, 319 (2010) (citing *People v. Campbell*, 208 Ill. 2d 203, 218 (2003)).

¶ 53      Here, although the State's entire case was presented by stipulation, the defendant did not fail to preserve a defense. His counsel made clear that he was preserving his suppression-of-evidence issue for appeal. Also, the defendant was careful not to concede the sufficiency of the evidence to support a conviction. Counsel made clear that he was merely stipulating that the police officer would testify that the defendant had failed to stop, and he was not conceding that the defendant had failed to stop.

¶ 54      The defendant's stipulated bench trial clearly was not tantamount to a guilty plea. Therefore, Rule 402 admonitions were not required. Any argument to the contrary would lack substantive merit.

¶ 55      The fourth potential issue is whether the trial court erred in finding that the defendant's ineffective-assistance claims lacked merit, after the defendant failed to appear for the preliminary *Krankel* hearing on those claims. This court reviews the trial court's determination at a preliminary *Krankel* hearing for manifest error. *People v. Jackson*, 2020 IL 124112, ¶ 98. Manifest error is error that is clearly evident, plain, and indisputable. *Id.*

¶ 56      When a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel, the trial court must conduct an inquiry into the factual basis, if any, of the defendant's claim. *People v. Ayres*, 2017 IL 120071, ¶ 11; *People v. Krankel*, 102 Ill. 2d 181, 189 (1984). This inquiry

is commonly referred to as a preliminary *Krankel* inquiry or a preliminary *Krankel* hearing. A preliminary *Krankel* inquiry usually requires the court to engage in some interchange with trial counsel to assess the facts and circumstances underlying the allegations and determine what further action, if any, is warranted. *People v. Jolly*, 2014 IL 117142, ¶ 30. If the defendant's allegations show possible neglect of the case, the trial court should appoint new counsel for the defendant. *Ayres*, 2017 IL 120071, ¶ 11. However, "[i]f the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Id.* If the trial court has failed to conduct any inquiry into defendant's allegations, the case should be remanded to the trial court for the limited purpose of carrying out the preliminary *Krankel* inquiry, so defendant has the opportunity to specify and support his complaints against counsel. *Id.* at 79.

¶ 57    Here, it was on December 20, 2023, that the defendant raised a *pro se* posttrial motion of ineffective assistance of trial counsel. Specifics were few and vague. The trial court, contrary to *Krankel* and its progeny, failed to conduct any type of inquiry. On appeal, this court remanded the cause for a preliminary *Krankel* inquiry into the ineffective-assistance claims. *Hollgarth*, No. 5-24-0580.

¶ 58    Upon remand, the trial court scheduled a status hearing for February 5, 2025. The circuit clerk mailed notice of the status hearing to the defendant, but the defendant failed to appear. At that status hearing, a hearing was scheduled for March 26, 2025. The trial court directed the public defender to mail the defendant notice of the March 26, 2025, hearing, and the public defender complied. However, the defendant failed to appear at the hearing on March 26, 2025.

16

¶ 59    On March 26, 2025, the trial court was prepared to inquire into the factual basis for the defendant's *pro se* posttrial claims of ineffective assistance. However, the defendant's absence precluded such an inquiry. At the hearing, trial counsel stated that his recollection was that the defendant, at the time of sentencing, stated that he was not interested in pursuing any complaints about trial counsel. The trial court, based on trial counsel's representations and its own recollections, found the *pro se* claim meritless and denied the appointment of new counsel.

¶ 60    The record does not contain any indication that trial counsel neglected the case. The trial court's inquiry into possible ineffective assistance was sufficient to satisfy *Krankel* and its progeny. There was no manifest error in the trial court's determination, and no argument to the contrary would have merit.

¶ 61    The fifth potential issue is whether the defendant's sentence for driving while driver's license was suspended or revoked is excessive. The Illinois Constitution mandates that all penalties be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11. A reviewing court may not alter a defendant's sentence unless there was an abuse of discretion by the trial court. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). A sentence will be deemed an abuse of discretion where the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). A reviewing court must not substitute its judgment for the trial court's judgment. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 62    Here, the defendant was sentenced to a term of imprisonment of one year. The defendant committed the instant offense after he already had been convicted of that offense three times, making the instant conviction his fourth. Therefore, the instant offense was a Class 4 felony, and

one requiring "a minimum term of imprisonment of 180 days." See 625 ILCS 5/6-303(d-3) (West 2020). A Class 4 felony is punishable by a term of imprisonment for one to three years. 730 ILCS 5/5-4.5-45(a) (West 2020). The defendant's driver's license had been revoked since 1994, nearly 30 years before the instant offense. The court imposed the lowest prison sentence available—one year. Furthermore, the one-year prison sentence was exactly what the defendant had requested in his February 13, 2024, motion to reconsider sentence, and exactly that to which the parties eventually agreed. Given these facts, there is no meritorious argument that the trial court abused its discretion in sentencing the defendant.

¶ 63    The sixth potential argument raised by OSAD in its *Anders* brief is whether the trial court's failure to admonish the defendant under Illinois Supreme Court Rule 605(a) (eff. Dec. 7, 2023), regarding how to challenge his sentence, requires remand for proper admonishments. Because this issue concerns the proper interpretation of a supreme court rule, appellate review is *de novo*. *People v. Henderson*, 217 Ill. 2d 449, 458 (2005).

¶ 64    Rule 605, titled "Advice to Defendant," sets forth the admonishments regarding the right to appeal that a trial court must give to a criminal defendant after judgment and sentence. The rule is in three subsections. Subsection (a) of Rule 605 sets forth the admonishments for a defendant who was found guilty after a trial. Subsection (b) sets forth the admonishments for a defendant who entered a plea of guilty. Subsection (c) sets forth the admonishments for a defendant who entered a plea of guilty pursuant to a negotiated plea. Ill. S. Ct. R. 605 (eff. Dec. 7, 2023).

¶ 65    The instant defendant was found guilty after a trial, albeit a trial that consisted entirely of stipulated evidence. Therefore, the trial court, after entering judgment and sentence, was supposed to admonish the defendant under Rule 605(a). See *People v. Horton*, 143 Ill. 2d 11, 20-22 (1991) (where the trial court finds the defendant guilty based on stipulated evidence, the court should

admonish the defendant under Rule 605(a)). However, the trial court incorrectly admonished him under Rule 605(c), the subsection for a defendant who pleaded guilty pursuant to a negotiated plea. The trial court wrongly instructed the defendant that prior to taking an appeal, he needed to file with the trial court a written motion seeking to vacate the judgment and to withdraw the plea.

¶ 66 Strict compliance with Rule 605(a), though, is not mandatory. "[W]here a defendant is given incomplete Rule 605(a) admonishments regarding the preservation of sentencing issues for appeal, remand is required only where there has been prejudice or a denial of real justice as a result of the inadequate admonishment." *Henderson*, 217 Ill. 2d at 466.

¶ 67 Here, the inadequate Rule 605(a) admonishment did not prejudice the defendant or deny him real justice. As discussed above, his one-year prison sentence for a Class 4 felony was far from excessive. Indeed, the sentence was exactly that which the defendant, in his motion to reconsider the sentence, had asked the trial court to impose. The defendant does not present any actual sentencing issues that he was precluded from raising because of inadequate admonishments. See *id.* at 468.

¶ 68                                      III. CONCLUSION

¶ 69 None of OSAD's six potential issues has arguable merit. This court cannot identify any issue of arguable merit that could result in the reversal or modification of the judgment of conviction. Accordingly, this court grants OSAD leave to withdraw as the defendant's appellate counsel and affirms the judgment of conviction entered by the trial court.


¶ 70 Motion granted; judgment affirmed.